IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Classic Cab Inc.** | : | |
| 2014 5TH St NE | : | Case No. |
| Washington DC, 20002 | : | |
| and | | Case: 1:17-cv-02820        (D-Deck)<br>Assigned To : Cooper, Christopher R.<br>Assign. Date : 12/29/2017<br>Description: TRO/PI        Jury Demand |
| **Mushtaq Gilani** | : | |
| 8109 Bluebonnett Drive | : | |
| Lorton, VA 22079 | : | |
| v. | : | |
| **District of Columbia** | : | |
| John A. Wilson Building | : | |
| 1350 Pennsylvania Avenue NW | : | |
| Washington DC 20004 | | |
| | | |
| **Muriel Bowser, Mayor of D.C.** | : | |
| Office of the Mayor | : | |
| John A. Wilson Building | : | |
| 1350 Pennsylvania Avenue | : | |
| NW Washington, DC 20004 | | |
| | | |
| **Ernest Chrappah, Director** | : | |
| Department of For-Hire Vehicles | : | |
| Executive Offices Suite 3001 | : | |
| 2235 Shannon Place SE | : | |
| Washington, DC 20020 | : | |
| | : | |
| **Department of For-Hire Vehicles** | : | |
| Executive Offices Suite 3001 | : | |
| 2235 Shannon Place SE | : | |
| Washington, DC 20020 | : | |

<u>**Complaint**</u>

I. PRELIMINARY STATEMENT

*"Every dictatorship, it seems, begins with some sort of claim of crisis or emergency."* Sanford Levinson & Jack M. Balkin, Constitutional Dictatorship: Its Dangers and Its Design, 94 MINN. L. REV. 1789, 1809 (2010).

1. "Emergency rulemaking" is an "extraordinary" remedy that may be used by an agency only during the unusual circumstance where the general public faces an immediate threat or danger to health, safety or property and where delay would be detrimental if rulemaking were to take its normal course.

2. The Department of For-Hire Vehicles (DFHV) an agency of unelected public officials, created an unprecedented series of "emergency" rulemakings in an unlimited, dogmatic power grab from the citizens of the District of Columbia.

3. On September 16, 2016 the DFHV announced "that rulemaking must be enacted as emergency rulemaking because there is an immediate need to preserve and promote the safety and welfare of District residents, in order to directly and indirectly alleviate the rapidly-deteriorating competitive position of taxicabs in the District's vehicle-for-hire industry." Said "emergency" could only be dealt with by issuing ***regulations requiring taxicab companies and their drivers to use a computer App to calculate taxicab fares***.

4. Despite the facts that no real emergency existed and despite the explicitly clear 120 day statutory limitation imposed on administrative agencies for emergency rulemaking, the DFHV nevertheless, created said initial emergency rulemaking and then created six (6) *additional*, substantially similar, successive "emergency rulemakings." That is, over a period of approximately 15 months, without any notice, review or input by or from the public or its elected officials, the DFHV unlawfully created regulations in successive unlawful "emergency orders." Presently, the DFHV has no intention to stop enacting emergency rules – as another illegal rulemaking will apparently be created by DFHV on or before February 18, 2018 when the current "emergency rulemaking" expires.

5. Additionally, without any evidence that the health, safety, or property of D.C. residents would suffer tangible harm if rulemaking was delayed, on June 28, 2017, the DFHV declared in an "emergency rulemaking" that all taximeters currently in use were obsolete and ordered taxicab companies and drivers to remove them all

by August 31, 2017 and replace them with the new App. In a subsequent emergency rulemakings on August 30, 2017 and October 27, 2017, the DFHV changed the removal deadline to December 31, 2017.

6. Said actions by DFHV have caused and are causing great harm to plaintiff's business. DFHV's actions are unlawful because they violate; the Due Process Clause of the 5th and 14th Amendments, D.C. Code 2-505 (c), D.C. Code 2-510 and the Contracts Clause of the Constitution.

7. The DFHV has ignored the laws of D.C. and arbitrarily done whatever it wanted to do by using emergency rulemaking – as if it were accountable to no one. There is no imminent emergency facing D.C. residents regarding taxicabs and their use of taximeters.

8. With the exceptions of unsafe vehicles or dangerous drivers on the road, it is doubtful as to whether the taxicab industry itself could ever pose an immediate danger to the safety or well being of D.C. residents. Unless the voters say so or it is otherwise essential to the economy, it is not the role of government agencies to rejuvenate declining profits; for example, if residents choose to stop patronizing video stores, such as Blockbuster Video, what to do, announce a city emergency? The DFHV's fantastic actions in this matter are a limitless usurpation of power and done to circumvent the normal rulemaking process and review by the public. DFHV's actions have caused substantial harm to plaintiffs.

## II. Relief

9. The plaintiffs bring this lawsuit to enforce their 5th Amendment rights under the U.S. Constitution and their rights under the laws of the District of Columbia against the District of Columbia for its unlawful, arbitrary emergency rulemaking that deprives them of their property without Due Process. Plaintiffs also seek to rescind and declare all regulations in said emergency rulemaking as void.

10. Plaintiffs seek relief, including:

a) immediate recision of all DFHV emergency rulemaking in this matter rendering all unlawfully proposed rules and regulations as void;

b) a preliminary and permanent injunction enjoining all the enforcement of provisions in all parts of DFHV's emergency rulemaking and specifically enjoinment of DFHV's December 31, 2017 deadline to replace taximeter

c) an order directly ordering DFHV to immediately inform the public and all taxicab drivers and companies that said deadlines and all emergency rulemaking has been enjoined and made void by the court;

d) a declaratory judgment declaring the DFHV's emergency rulemaking in this matter as unconstitutional and void;

e) complete restitution, compensatory and punitive damages for the irreparable financial and emotional damage done to the plaintiff's as a result of DFHV's arbitrary, abuse of power.

### III. JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1346; 28 U.S.C. § 2201; 28 U.S.C. § 2202 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; Bivens; the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.; 42 U.S.C. § 1983; and 18 U.S.C. §§ 3142, 3144. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). This court has supplement jurisdiction pursuant to U.S.C. § 1367(a).

12. Venue is proper in the District of Columbia because all of the events complained of and giving rise to Plaintiff's claims occurred in this District. See 28 U.S.C. §§ 1391(b), 1391(e), 1402(b).

### IV. THE PARTIES

13. Plaintiff Classic Cab Inc. is a business located in the District of Columbia.

14. Mustaq Gilani is the primary owner of Classic Cab. He is domiciled and is a resident of Virginia.

15. Defendant District of Columbia is a municipal corporation, organized under the laws of the District of Columbia and the United States.

16. Defendant District of Columbia owns, operates, manages, directs, and controls the D.C. Taxicab Commission, which employs defendant Ernest Chrappah.

17. Defendant District of Columbia had full knowledge, actual and constructive, of the customs, usages, policies, and practices of the DFHV and is fully responsible for such customs, policies, usages and practices.

18. Defendant District of Columbia employs defendant Muriel Bowser. She is and was at all times relevant to this Complaint the mayor of the District of Columbia. She is sued in her official capacity.

19. Defendant Ernest Chrappah is and was at all times relevant to this Complaint an employee of the DFHV and is presently the acting director of the DFHV. He is sued in his official capacity.

20. At all times relevant to this Complaint, all the defendants were acting within the scope and course of their employment.

21. At all times relevant to this Complaint, all defendants acted under color of state law.

**Factual Allegations**

22. The DFHV and its director, Ernest Chrappah, are unelected public officials.

23. Nearly 500 (five hundred) days ago on September 16, 2016 the DFHV declared that residents of the District of Columbia were facing an immediate emergency because they were not catching enough taxicabs, consequently causing profits to decline, and therefore their safety and welfare was in danger.

24. In the first emergency rulemaking the DFHV announced, "The Department finds that rulemaking must be enacted as emergency rulemaking because there is an immediate need to preserve and promote the safety and welfare of District residents, in order to directly and indirectly alleviate the rapidly-deteriorating competitive position of taxicabs in the District's vehicle-for-hire industry, and to accomplish other lawful objectives within the jurisdiction of the Department." See page 1 of 9/13/2016 emergency. It explains that "that there has been a continuous decline in total monthly taxicab rides-month after month for the past 12 months – without interruption" because "District residents and visitors" have chosen to use other modes of transportation. Id page 2, 3rd paragraph.

25. To avoid this "immediate," "danger" to the safety and welfare of residents, the DFHV created an emergency regulation to replace existing taximeters in taxicabs with a computer App taximeter that did not yet exist. See Id. page 5. The emergency rulemaking called the future computer App a "digital taxicab solutions" or DTS. This nonexistent App "will allow for amazing innovations" in the future. Id. Its primary function was to calculate passenger fares using GPS over WIFI networks.

26. The emergency rulemaking said that after August 31, 2017, MTS taximeters will be replaced with digital taxicab solutions or DTS, by the end of the current MTS licensing period" (August 31, 2017).

27. Including the first rulemaking on September 13, 2016 the DFHV has enacted 7 (seven) emergency rulemaking orders for the same emergency– six have been successive. All seven emergency rulemakings concern the exact same emergency and contain the exact same basis, using the same language.

28. DFHV emergency rulemakings 1 through 6 use the exact same language as indicated above.

29. However, emergency rulemaking 7 does not cite any "continuous decline in total monthly taxicab rides." Rather, it states "The Department believes that this rulemaking must be enacted on an emergency basis *because there is an immediate need to preserve and promote the safety and welfare of District residents by extending the DTS implementation date from November 1, 2017, to January 1, 2018, to allow additional opportunities for businesses that provide payment processing, and thereby to provide increased options to DTS providers and independent operators.*" See page 3, paragraph 5.

30. All seven rulemakings cite to one another (each citing the previous rulemaking) in a successive chain. All the rulemakings were unpublished.

31. Specifically, emergency rulemaking was adopted on and during the following successive periods of time.

    1) September 13, 2016 to expire on January 11, 2017

    2) January 11, 2017 to expire on May 11, 2017

    3) May 11, 2017 to expire on September 8, 2017 (interrupted, expired June 28, 2017)

    4) June 28, 2017 to expire on October 26, 2017 (interrupted, expired August 11, 2017)

    5) August 11, 2017 to expire on December 9, 2017 (interrupted, expired August 28, 2017)

    6) August 28, 2017 to expire on December 26, 2017 (interrupted, expired October 27, 2017)

    7) October 27, 2017 which is set to expire on February 24, 2018.

32. Specifically, on June 28, 2017, in the 5th emergency rulemaking the DFHV declared that on October 31, 2017 it would be unlawful to use MTS taximeters in any taxicab. The use of the DTS computer App would be mandatory beginning September 1, 2017. See page 5, paragraph 2.

33. Subsequently, in the 6th emergency rulemaking the DFHV extended the MTS taximeter expiration deadline to said expiration date to October 31, 2017 – prohibiting their use after said date. It stated, "*the Department believes that this rulemaking must be enacted on an emergency basis rulemaking because there is an immediate need to preserve and promote the safety and welfare of District residents by extending the DTS implementation date from August 31, 2017, to October 31, 2017 to provide allow taxicab companies, associations, independent owners, and rental drivers additional time to choose from among the solutions offered by the approved DTS providers.*"

34. Then, the 7th emergency rulemaking extended the MTS taximeter expiration deadline again to December 31, 2017 – banning their use and requiring their removal from all taxicabs by said date. See page 3, paragraph 5 and See 401.7 of 7th Emergency. The devices are to be replaced with a DFHV approved DTS App no later than January 1, 2018. After said date, the DFHV has prohibited the use of a MTS taximeter in any taxicab – that is, no taxicab may be operated in D.C. without the new computer App.

35. None the emergency rulemaking has been published and filed in the D.C. Register.

36. None of the emergency rulemaking has been reviewed by D.C. City Council.

37. None of the emergency rulemaking has been reviewed by the voting public at large.

38. The DFHV emergency rulemaking has been in perpetual effect for nearly 500 days.

39. None of the DFHV emergency rulemaking cite or make annotated references to any studies or empirical research done to factually support its alleged claim that there is a city-wide "emergency" posing immediate danger to the safety or welfare of the residents of the District of Columbia.

40. None of the DFHV emergency rulemaking cite or make annotated references to any studies or empirical research done to factually support its alleged claim that a GPS based computer App taximeter will relieve the City from the alleged immediate emergency.

41. None of the taxicab companies requested the DFHV to prohibit the use of MTS taximeters and replace them with a DTS computer App.

42. On information and belief no taxicab drivers requested the DFHV to prohibit the use of MTS taximeters and replace them with a DTS computer App.

43. Pursuant to the emergency rulemaking only taxicab companies are now able to be DTS providers; that is, only taxicab companies can provide the App to their taxicab drivers. Companies and/or drivers are precluded from obtaining the App from 3rd party or non-taxicab companies.

44. Although, any taxicab company may become a DTS provider by creating its own App, the DFHV has only authorized five taxicab companies to be DTS providers – out of Approximately 40 taxicab companies in D.C. Among said five companies, only two taxicab companies have their own App while the other three DTS providers use the App created by the DFHV.

45. In 2013 the plaintiff, Classic Cab entered into seven year contract with Creative Mobile Technology (CMT) to provide installation and maintenance of CMT's taximeter or MTS and PSP (payment service provider or credit card payment processor) into all of Classic Cab's vehicles. In 2016 Classic Cab had Approximately 1,700 taxicabs in its fleet. Classic Cab installed CMT's taximeter and PSP into all the vehicles in its fleet. Pursuant to our agreement Classic Cab earned .25% on each credit card transaction and 10 cents per credit card swipe and a $5 monthly maintenance fee for each driver in our fleet. Classic Cab made $300,000 annually from maintenance fees from the taximeter and $20,000 per month from the contract.

46. Classic Cab employs 1700 taxicab drivers and 6 employees in its office and garage.

47. As a direct result of DFHV's emergency orders the plaintiffs business and profits have been dramatically diminished. Since June 28, 2017, Classic Cab has lost 1300 drivers and correspondingly taken 1300 vehicles out of service. With each passing week, especially since November 1, 2017, Classic Cab has lost more and more drivers vehicles. The DFHV emergency orders to permanently ban the taximeter has caused and is causing immediate irreparable harm. The DFHV's actions have resulted in $50,000 per month in lost profits since July. If the permanent ban takes place plaintiffs may lose it's entire fleet within the next 30 days. The taximeter ban also will render meaningless plaintiff's contract with CMT and potentially subject Classic Cab to a lawsuit for breach of their agreement.

48. Mr. Mushtaq Gilani, an owner of Classic Cab, has explained that due to the DFHV emergency regulations, Classic Cab may have to layoff its five employees and completely shut down all of its operations.

49. Furthermore, according to Mr. Gilani, the DFHV order has also caused great personal anxiety and emotional stress to himself, his family members, employees and taxicab drivers. The respondents and their families depend on the PAC for their livelihoods and financial well being. Thus, the DCTC suspension orders affect nearly every aspect of their lives.

Wherefore, the plaintiff demands monetary judgment against the defendant, punitive damages, declaratory and equitable relief restoring petitioners' status and vacating all DCTC orders, plus costs and attorney's fees.

Respectfully submitted

/CR/

Chesseley A. Robinson [485505]
2516 Australia Drive
Raleigh, NC 27610
(202) 420-6459
Chesseley@chesseleycares.com
Counsel for the Plaintiff

/SMR/

Sean M. Riley - Bar No. 975009
601 Pennsylvania Avenue NW,
South Bldg. Suite 900
Washington, DC 20004
Attorney-Riley@Earthlink.Net
Counsel for the Plaintiff

I declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on December 29, 2017.

/CR/

Chesseley A. Robinson [485505]
2516 Australia Drive
Raleigh, NC 27610
(202) 420-6459
Chesseley@chesseleycares.com
Counsel for the Plaintiff

/SMR/

Sean M. Riley - Bar No. 975009
601 Pennsylvania Avenue NW,
South Bldg. Suite 900
Washington, DC 20004
Attorney-Riley@Earthlink.Net
Counsel for the Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this 29th day of December, 2017, a copy of the foregoing was mailed via first class mail to to the following parties:

Muriel Bowser
John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004

General Counsel
Office of the Attorney General for the District of Columbia
Public Interest Division, Equity Section
441 4th Street NW
Suite 600S
Washington, DC 20001

Ernest Chrappah
Department of For-Hire Vehicles
2001/Executive Offices Suite 3001
2235 Shannon Place SE
Washington, DC , 20020

Department of For-Hire Vehicles
Executive Offices Suite 3001
2235 Shannon Place SE
Washington, DC 20020


_____/CR/_____
Chesseley A. Robinson, Esq.


I, Mushtaq Gilani, _____/MG/_____ declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on December 28, 2017.

/s/ Chesseley Robinson
Chesseley Robinson [#485505]
2516 Australia Drive
Raleigh, NC 27610
Telephone: 202-420-6459
Email: Chesseley@Chesseleycares.com
Attorney for Plaintiff